UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**CYNTHIA K. MANNERS,**

    **Plaintiff,**

                                  Case No. 3:16-cv-00010
   vs.                             **JUDGE ALETA A. TRAUGER**
                                  Magistrate Judge King

**SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**

**To:** The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383 for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14)("Motion for Judgment") and Memorandum in Support (Doc. No. 15), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 16)("Response"), Plaintiff's Reply (Doc. No. 17), and the administrative record (Doc. No. 10).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. 14) be **DENIED,** that the decision of the Commissioner be **AFFIRMED,** and that final judgment be entered in favor of the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[1] Citations to pages in the Administrative Record will appear as "Tr. ___."

1

## Introduction

Plaintiff filed this – her second – application for benefits in April 2012, alleging that she has been disabled since May 4, 2004, by reason of carpal tunnel syndrome, diabetes, high blood pressure, asthma, high cholesterol, back pain, depression, and migraine headaches. Tr. 199. The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ").

An administrative hearing was held on April 10, 2014. Plaintiff, represented by counsel, testified, as did vocational expert Rebecca G. Williams. Tr. 32-55. In a decision dated June 11, 2014, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act from the date of her application through the date of the administrative decision. Tr. 12-25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 3, 2015.

This action was thereafter timely filed. The Court has jurisdiction over the matter. 42 U.S.C. § 405(g).

## The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since April 20, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: history of carpal tunnel syndrome with bilateral release, degenerative disc disease, diabetes mellitus, obesity, mild and non-displaced tear of posterior horn in left knee, depressive disorder not otherwise specified, and adjustment disorder with moderate depressed mood (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs. She can never climb ladders, ropes, or scaffolds. She can have no concentrated exposure to vibration. As for mental limitations, she can perform a job that has simple, routine and repetitive tasks. She can tolerate infrequent workplace changes and can have only occasional contact with the public. She can frequently handle and grasp bilaterally.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on March 1, 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14, 16, 23-24).

## Summary of Relevant Evidence

<u>Physical Impairments:</u>

In March 2010, Plaintiff was consultatively examined by Donita

3

Keown, M.D. Plaintiff's primary complaint at that time was carpal tunnel syndrome, which was reported to be worse than before her bilateral carpal tunnel release in 2002. Tr. 316. Clinical findings included negative straight leg raising, negative neurological exam, and unremarkable gait and station; grip strength was intact. Tr. 318. Diagnoses included bilateral upper extremity complaints of unclear etiology; diabetes mellitus, type 2, well controlled; hypertension; asthma; chronic low back pain attributable to degenerative disease; chronic headache pain; and GERD. Tr. 318-19. According to Dr. Keown, Plaintiff could sit, and stand or walk, for 8 hours in an 8-hour workday, and could lift up to 40 pounds occasionally and up to 25 pounds frequently. Tr. 319.

In July 2010, Juan Stacy Dinkins, D.O., treated Plaintiff for complaints of increased discomfort in the lower lumbar spine with paresthesias radiating into the lower extremity. On examination, Dr. Dinkins noted grip strength of 5/5, positive straight leg raising, equal and symmetric reflexes, paresthesia in the lower extremities that resembled a L5/S1 dermatomal pattern, Tr. 365, although a subsequent nerve conduction study was within normal limits and "[t]he likelihood of a right L5/S1 radiculopathy or proximal neuropathy [was] low." Tr. 363. Dr. Dinkins also noted difficulty with heel and toe walking. Tr. 365. X-rays of the lumbar spine showed degenerative disk disease with disk space and foraminal narrowing, and facet arthropathy. There was no appreciable spondylolisthesis. Tr. 368. Dr. Dinkins diagnosed Type II diabetes mellitus (controlled), hyperlipidemia, hypokalemia, depressive disorder (nos), migraine, hypertension, asthma, GERD, degenerative joint disease, osteoarthrosis in the lower leg, lumbosacral spondylosis, lumbosacral disk

4

degeneration, stenosis of the lumbar spine, and bursitis of the hip. He recommended an MRI, home therapy, and increased activities as tolerated. Tr.365. An MRI conducted in October 2010 revealed mild degenerative disk disease of the lumbar spine with mild disk space and bilateral foraminal stenosis. Tr. 512, 514. A November 2010 MRI of the left knee revealed degenerative joint disease with a lateral meniscus tear. Tr. 380, 508, 510. During a follow-up office visit with Dr. Dinkins in November 2010, Plaintiff continued to complain of discomfort and pain in the lumbar spine and knees. Tr. 512. On clinical examination, straight leg raising was negative and reflexes were equal and symmetric. There was difficulty with heel and toe walking. Grip strength was 5/5. *Id*. In December 2010, Dr. Dinkins again noted negative straight leg raising, equal and symmetric reflexes, and grip strength of 5/5. Tr. 508. X-rays of the lumbar spine and left hip taken following a fall in October 2011 were normal. Tr. 501, 502. X-rays of the thoracic spine show mild dextroconvex curvature. Tr. 503.

Julie A. Perrigin, M.D., who has been Plaintiff's primary care physician for "several years," Tr. 518, rendered diagnoses of depression, hyperlipidemia, hypertension, asthma, bilateral carpel tunnel release, GERD, and headaches. Tr. 468, 470. Findings during a September 2011 office visit included a normal gait and stance. Tr. 471.

In June 2012, Dr. Keown consultatively examined Plaintiff once again in connection with her disability claim and based on complaints of carpal tunnel syndrome, diabetes mellitus, hypertension, asthma, and high cholesterol. Tr. 456-57. On clinical examination, Dr. Keown reported 5/5 motor strength, on best effort, and unremarkable gait and

5

station. According to Dr. Keown, Plaintiff could sit, and stand or walk, 6 to 8 hours in an 8-hour workday and peform lifting and carrying without restriction as tolerated. Tr. 458.

In July 2013, Dr. Perrigin wrote, in support of Plaintiff's disability claim, that she has provided chronic pain management for Plaintiff's chronic low back pain and sciatica (and that those conditions have resulted in depression and anxiety) and hypertension, diabetes, hyperlipidemia, and asthma. Tr. 518. Dr. Perrigin also referred to Plaintiff's medical history and treatment by other providers, including "long standing disability from bilateral carpal tunnel." *Id.* Dr. Perrigin stated:

> In review of the previous doctors' assessments and in her present health condition with limitations in financial stability, I feel that Ms. Manners has a strong case for long term disability.

*Id.*

Mental Impairments:

In February 2010, Dawn M. Brandau, Ph.D., consultatively examined Plaintiff at the request of the state agency. Plaintiff reported no mental health treatment other than psychotropic medications prescribed by her primary care physician. Tr. 311. On clinical examination, Plaintiff was oriented. Dr. Brandau noted a mild impairment in short term memory, and moderate impairment in Plaintiff's ability to sustain concentration and in long term and remote memory. Tr. 314. There was a mild impairment in social relating and in her ability to adapt to change. *Id.* Dr. Brandau diagnosed a depressive disorder, nos, and placed Plaintiff's global assessment of functioning ("GAF") at 65. Tr. 315.

In November 2010, Mark W. Petro, Ph.D., performed a consultative examination of Plaintiff on referral by the state agency. Dr. Petro

6

diagnosed a major depressive disorder, recurrent and in partial remission; he placed Plaintiff's GAF at 54. Tr. 377. According to Dr. Petro, Plaintiff was mildly-to-moderately impaired in her ability to consistently understand and remember complex instructions, in her ability to exhibit sustained concentration and persistence for making complex decisions, and in her ability to persist without interruptions from psychological symptoms within the work setting. Tr. 377-78. She was mildly impaired in her ability to interact with the general public and co-workers, and in her ability to respond appropriately to changes in the work setting. Tr. 378.

In June 2012, Paul Brown, Ph.D., consultatively examined Plaintiff at the request of the state agency. On clinical examination, Plaintiff was oriented; she was depressed in mood and her affect was flat. Tr. 451. Dr. Brown diagnosed an adjustment disorder with moderate depressed mood. Tr. 453. According to Dr. Brown, Plaintiff is moderately impaired in her ability to understand and remember simple or detailed instruction, in her ability to engage in sustained concentration and persistence, in her ability to interact with the general public and co-workers and to respond appropriately to supervisors, and in her ability to respond appropriately to changes in the work setting. Tr. 453-54. He placed Plaintiff's GAF at 55 to 60. Tr. 455.[2]

### Plaintiff's Claims

Plaintiff asserts the following claims, repeated here *verbatim*:

1. The ALJ erred by not giving proper weight to the opinion of the Plaintiff's treating physician as required by statute, caselaw, and applicable rulings (SSR 96-2p).

---

[2] The administrative record also includes evaluations of the medical records and assessments of Plaintiff's RFC by state agency physicians and psychologists.

2. The ALJ erred by failing to follow the requirements of *Dennard and Drummond*.

3. The ALJ erred by not giving proper consideration to the Plaintiff's functional limitations as the result of her obesity, according to SSR 02-1P.

4. The ALJ erred by failing to properly consider the Plaintiff's GAF score.

5. The ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p.

Memorandum in Support (Doc. No. 15, PageID# 644-52). Plaintiff does not challenge the ALJ's credibility determination, nor does she challenge the vocational evidence.

## Standard of Review

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the Commissioner's decision is supported by substantial evidence, it must

be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

**Discussion**

1. Opinion of Treating Physician

Plaintiff complains that the ALJ failed to properly evaluate the July 2013 opinion of Dr. Perrigin in which the doctor opined that, based on "previous doctors' assessments and in [Plaintiff's] present health condition with limitations in financial stability," Plaintiff "has a strong case for" disability. Tr. 518. The opinion of a treating physician must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the ALJ is required to look at the record as a whole to determine whether

9

substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. § 416.927(c)(2), (4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating source, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

In the case presently before the Court, the ALJ recognized that Dr. Perrigin had treated Plaintiff for a number of years, Tr. 18, and accurately summarized Dr. Perrigin's treatment of Plaintiff, Tr. 19. However, Dr. Perrigin's opinion was "not given significant weight" by the ALJ:

> First, Dr. Perrigin's letter did not provide a function-by-function analysis and offers an opinion on an issue reserved to the Commissioner. Second, Dr. Perrigin's opinion letter is inconsistent with the undersigned's review of the claimant's treatment records, which generally show no significant findings. For example, while Dr. Perrigin mentions the claimant's carpal tunnel syndrome in the letter, there are no current carpal tunnel syndrome issues raised in the underlying treatment records. Lastly, the medical evidence of record mentions the claimant's menstrual bleeding issues, but she underwent surgery for this problem. As a result, the undersigned does not find anything in the medical evidence to suggest that her menstrual bleeding is an ongoing or disabling problem.

10

Tr. 23 (citations to the record omitted).

An opinion that a claimant is unable to work "is tantamount to a disability opinion, a matter reserved to the Commissioner for determination." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011). *See also Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112 (6th Cir. 2010)("The applicable regulations provide that a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion'[;] rather, it is an opinion on an 'issue[] reserved to the Commissioner because [it is an] administrative finding[] that [is] dispositive of a case, *i.e.,* that would direct the determination or decision of disability.'")(quoting 20 C.F.R. § 404.1527(e)(1)).

Further, a fair reading of Dr. Perrigin's opinion supports the ALJ's observation that her opinion was based, at least in part, on the the earlier diagnosis by other providers of carpel tunnel syndrome, a diagnosis that is no longer supported by the objective medical records.

In short, The ALJ correctly applied the standards of the treating physician rule to his evaluation of Dr. Perrigin's opinion. The ALJ gave good reasons for that evaluation, and that evaluation enjoys substantial support in the record. Under these circumstances, the Court finds no error with the Commissioner's decision to that extent.

2. Effect of Prior Determination

Plaintiff previously filed an application for supplemental security income, which was denied following an administrative hearing in February 2007. Tr. 59-66. At that time, Plaintiff's severe

impairments were determined to include "bilateral carpal tunnel syndrome; bilateral status post [carpal tunnel] release; lumbar degenerative disc disease and major depression." Tr. 61. The prior ALJ found that these severe impairments left Plaintiff with the RFC for

> a limited range of light work: (lift/carry 20 pounds occasionally and 10 pound frequently; stand and walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday, and occasional postural activities); no lifting with either upper extremity of any weight greater than 5 pounds repetitively and 10 pounds maximally. She is to avoid hand-intensive work such as pushing, pulling, and/or manipulating heavy objects with the upper extremities, as well as the use of vibrating or percussive tools and torque motion with the hands and wrists; and concerning mental limitations, the claimant can understand, remember and carry out only short and simple instructions; and have occasional contact with the public.

Tr. 61. The current ALJ also found that Plaintiff has an RFC for a limited range of light work, except that the current ALJ eliminated the restriction on Plaintiff's use of her hands. Tr. 16. Observing that the current ALJ found even more severe impairments than did the prior ALJ, Plaintiff contends that the ALJ erred by finding a less restrictive RFC.

In *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit held that, absent evidence of improvement in a claimant's condition or other changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ. *See also* Acquiescence Ruling 98-4(6).[3] *See also*

---

[3] When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a

12

*Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990)(Applying estoppel theory to an earlier administrative finding regarding a claimant's ability to perform his past relevant work). Thus, the ALJ in this case was required to adopt the February 6, 2007, finding as to plaintiff's RFC unless he determined that there was new and material evidence that demonstrates a change in plaintiff's condition or that there was a change in circumstances.

The ALJ found that there was such evidence: "There was medical improvement in the claimant's carpal tunnel syndrome. . . ." Tr. 12.

> For example, the treating notes show no complaints of carpal tunnel syndrome for the last couple of years. Carpal tunnel syndrome is not even listed as a current problem in the most recent medical records. The medical evidence does mention the carpal tunnel release by history, but there is never any mention of complaints of current symptoms. In addition, Dr. Keown was the only doctor [who] noted a reduced grip, but with encouragement, it increased to 5/5. Apparently, the claimant did not give full effort at first. In fact, some 2010 records indicated that the claimant displayed a grip strength of 5/5.

Tr. 22. That finding enjoys substantial support in the record and this Court therefore concludes that the ALJ did not err in failing to adopt in all respects the RFC found by a different ALJ in 2007.

3. Obesity

Plaintiff complains that the ALJ failed to properly consider Plaintiff's documented obesity in determining her RFC. An ALJ is required to consider obesity at the second through the fifth steps of the sequential evaluation of disability. SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). That ruling, however, "'does not mandate a

---

change in the law, regulations or rulings affecting the finding of the method for arriving at the finding.

63 Fed. Reg. at 29773; 1998 WL 274052.

particular mode of analysis,'" although it "directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006)). An ALJ satisfies this requirement so long as he credits "RFCs from physicians who explicitly accounted for [the claimant's] obesity." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010); *but see Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (holding that obesity "must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity'" (quoting SSR 02-1P, 2002 WL 34686281, at *1)).

In the case presently before the Court, the ALJ included obesity among Plaintiff's severe impairments, Tr. 14, and expressly recognized the mandate of SSR 02-1p, 2002 WL 34686281, Tr. 15. He considered Plaintiff's obesity in determining whether Plaintiff's impairments met or equaled a Listing, Tr. 15, as well as in determining Plaintiff's RFC, Tr. 21. In this regard, it is significant that Plaintiff does not suggest greater limitations in her RFC than were found by the ALJ by reason of her obesity. This Court concludes that the ALJ properly considered Plaintiff's obesity.

4. <u>GAF Scores</u>

Plaintiff complains that the ALJ improperly reduced the severity of her mental impairments because of her GAF score.

> The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from

14

> 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas.

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012). An ALJ is not bound by GAF scores. Although a GAF score may help an ALJ assess a claimant's mental residual functional capacity, the score is not itself raw medical data. *Kornecky v. Commissioner of Social Security,* 167 Fed. Appx. 496, 503 n. 7 (6th Cir. 2006). "Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Id.* The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.,* 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See Kornecky,* 167 Fed. Appx. at 511 ("We are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"), citing *Howard v. Commissioner of Social Security,* 276 F.3d 235, 241 (6th Cir. 2002).

The ALJ in this case recognized that the record reflects GAF scores ranging from 54 to 65, Tr. 20, which reflect moderate to mild impairment and functioning. In evaluating Plaintiff's mental impairments, the ALJ relied primarily on the opinion of Dr. Brown, the consultative psychologist who placed Plaintiff's GAF at 54-60 and who found Plaintiff to be moderately impaired. Tr. 20, 23. There is simply no basis for Plaintiff's contention that the ALJ evaluated Plaintiff's

mental impairments solely by reason of a GAF score.

5. RFC Assessment

The ALJ determined that plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs. She can never climb ladders, ropes, or scaffolds. She can have no concentrated exposure to vibration. As for mental limitations, she can perform a job that has simple, routine and repetitive tasks. She can tolerate infrequent workplace changes and can have only occasional contact with the public. She can frequently handle and grasp bilaterally.

Tr. 16. Plaintiff contends that the administrative law judge erred in making this find because he failed to engage in the function-by-function analysis required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). SSR 96-8p requires that the RFC determination consider certain exertional capacities or functions: "[s]itting, standing, walking, lifting, carrying, pushing, and pulling." *Id.*, 1996 WL 374184, at \*5. The Commissioner's regulations specify that a claimant's RFC must take into account the extent to which a claimant's "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reach, handling, stooping or crouching) . . ." may reduce the claimant's ability to work. 20 C.F.R. § 416.945(b). However, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record. *Delgado v. Commissioner of Social Sec.,* 30 F. Appx. 542, 548 (6th Cir. 2002).

16

In evaluating the ALJ's RFC determination in this case, it is important to remember that the ALJ was limited by the RFC determination made by the prior ALJ in 2007. *See Drummond,* 126 F.3d 840. The ALJ's actual RFC determination was consistent in most respects with that earlier RFC, and was reduced only to reflect the intervening improvement in Plaintiff's carpal tunnel condition. The ALJ fully considered the evidence regarding that improvement and the impact of that improvement on Plaintiff's ability to engage in work-related functions. The ALJ did not err in this regard.

In short, the undersigned concludes that the decision of the Commissioner is supported by substantial evidence and employed in all respects the proper legal standards.

## Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. No. 14) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that final judgment be entered in favor of the Commissioner pursuant to Sentence 4 of 42 U.S.C. § 405(g).

## Procedure on Objections

If any party seeks review by the District Judge of this report and recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the report and recommendation, specifically designating the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days thereafter. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the report and recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

                                      *s/Norah McCann King*
                                        Norah M$^c$Cann King
                          United States Magistrate Judge

August 3, 2017
 (Date)